UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>18-60329-CR-ALTMAN</u>

UNITED STATES OF AMERICA

vs.

JET LINK, INC.,

        Defendant.
_____/

## PLEA AGREEMENT

The United States of America and JET LINK, INC., (hereinafter referred to as the "defendant") enter into the following agreement:

### STIPULATED FACTUAL PROFFER

1. The parties agree that, were this case to proceed to trial, the government would prove the following facts beyond a reasonable doubt:

    a. Records maintained by the State of Florida, Secretary of State, Division of Corporations, reflect that JET LINK, INC. (hereinafter "JET LINK") was incorporated on July 18, 2013. Mr. ROBERT CANTONE was listed as JET LINK's president, while Ms. BRENDA SNELGROVE was listed as a JET LINK's vice-president. Mr. ALEX CANTONE and Mr. RONALD BURNS were each employed by JET LINK as sales representatives. The U.S. Government Central Contractor Registration records listed JET LINK as a United States Department of Defense (DoD) contractor with an assigned Cage Code No. 6YUL4, which allowed JET LINK to do business with the federal government. As a parts broker, JET LINK could buy, sell, or trade components between commercial

1

airlines, private aircraft, other brokers, and the DoD, and was an approved supplier of military parts and other transportation equipment parts to the DoD for use in several aviation and critical weapon system applications. JET LINK was awarded in excess of $7.7 million in DoD contracts since their incorporation, which included at least $6.1 million in Defense Logistics Agency (DLA) contracts from November 18, 2013 – April 20, 2016.

      b.    System for Awards Management ("SAM") was a database maintained by the General Services Administration (GSA) that combines and consolidates Federal procurement systems and information sources for government acquisition and financial assistance processes and data.

      c.    The DLA was a combat logistics support agency within the DoD that provided worldwide logistics, acquisition, and technical services to the United States armed forces, certain federal agencies, and partner nation armed forces. DLA maintained an automated web-based application known as the DLA Internet Bid Board System ("DIBBS") that allowed registered SAM users to bid on government contracts for the supply of military products.

      d.    Once the DoD issued a bid solicitation for an upcoming automated award contract, DoD contractors are required to submit their quotes to the DoD via the DLA's DIBBS system, and per Defense Logistics Agency Directive (DLAD) 52.211-9000, "offerors submitting quotations based on supplying surplus materials must fully complete and submit the Surplus Certificate and any supporting documentation off-line to the buyer, otherwise such quotations will be rejected as being technically unacceptable." DLAD 52.211-9000, which was incorporated into DLA surplus contracts, required

2

contractors to supply "surplus material" to the government, which was defined as "new, unused material that was purchased and accepted by the U.S. Government and subsequently sold by the DLA Disposition Services, by Contractors authorized by DLA Disposition Services, or through another Federal Government surplus program."

  e. From on or about November 18, 2013 and continuing until on or about April 20, 2016, in Broward County, in the Southern District of Florida, the defendant, JET LINK, INC., did knowingly and willfully, combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and with the intent to defraud make and use a materially false writing, entry, certification, document, and record concerning an aircraft part, in and affecting interstate commerce, that is, the defendant falsely certified in their electronic bid quotations, that JET LINK "currently possesses the material," and that the parts were "inspected for correct part number and for absence of corrosion or any obvious defects," were "in its original package," and were "new, unused, and not of such age or so deteriorated as to impair its usefulness or safety," as outlined in DLAD 52.211-9000, when in truth and fact, such parts had not yet been purchased by JET LINK and were not in their physical possession at the time of the certification, in violation of Title 18, United States Code, Section 38(a)(1)(C), all in violation of Title 18, United States Code, Section 38(a)(3).

  f. It was the object of the conspiracy that JET LINK'S employees and defendants, ROBERT CANTONE, ALEX CANTONE, BRENDA SNELGROVE, and RONALD BURNS, would unjustly enrich themselves by fraudulently winning contracts for the supply of aircraft parts to the Defense Logistics Agency (DLA), by supplying the

3

DLA with false certifications on their electronic bid quotations, wherein they stated JET LINK "currently possesses the material", and that the parts were "inspected for correct part number and for absence of corrosion or any obvious defects", were "in its original package," and were "new, unused, and not of such age or so deteriorated as to impair its usefulness or safety," when in fact such parts were not purchased until after the contract had been awarded by DLA.

  g. The manner and means by which the employee defendants sought to accomplish the object of the conspiracy included the following: Defendants ALEX CANTONE and RONALD BURNS, as representatives of JET LINK, would locate numerous solicitations seeking quotations advertised by the DLA for the supply of various aircraft parts which could be used in multiple military aircraft, including the T-37, H-3, H-60, F-16, F-4, T-64, KC-135, and the E-2C military aircraft, among others.

  h. Defendants ALEX CANTONE and RONALD BURNS would thereafter search through the "Inventory Locator Service," (ILS) a database which allowed vendors to easily search for and purchase aircraft parts from other commercial vendors, for parts that were requested by the DLA solicitations. Based on the information obtained from within the ILS, Defendants ROBERT CANTONE, ALEX CANTONE, BRENDA SNELGROVE, RONALD BURNS, and others known and unknown to the Grand Jury, submitted bids to the DLA via the DIBBS system.

  i. Defendants ROBERT CANTONE, ALEX CANTONE, BRENDA SNELGROVE, RONALD BURNS, and others known and unknown to the Grand Jury thereafter falsely certified in their electronic bid quotations, that JET LINK "currently possesses the material", and that the parts were "inspected for correct part number and for

4

absence of corrosion or any obvious defects", were "in its original package," and were "new, unused, and not of such age or so deteriorated as to impair its usefulness or safety," as outlined in DLAD 52.211-9000, when in fact such parts had not yet been purchased by JET LINK and were not in their physical possession at the time of the certification.

j.  Once a contract was awarded by the DLA, Defendants ROBERT CANTONE, ALEX CANTONE, BRENDA SNELGROVE, and RONALD BURNS would procure the parts from commercial vendors and thereafter supply them to the DLA to fulfill the requirements of the awarded contracts.

k.  Defendant BRENDA SNELGROVE, on behalf of JET LINK, would thereafter seek and receive payment from the DoD, for the supply of the contractually awarded and requested parts.

## TERMS OF THE AGREEMENT

2.  The defendant agrees to plead guilty to Count one (1) of the Indictment, which charges the defendant with Conspiracy to Commit Aircraft Parts Fraud, in violation of Title 18, United States Code, Section 38(a)(3).

3.  The defendant understands and acknowledges that it is responsible for acts committed by officers, directors, employees or agents of the defendant corporation which were committed within the course and scope of the employment or agency given to the officer, director, employee or agent by corporate defendant, and which were committed at least in part with the intent to benefit the defendant corporation.

4.  The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court

will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 2 and that the defendant may not withdraw their plea solely as a result of the sentence imposed.

5. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of their own misconduct by timely

6

notifying authorities of their intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

6.     The defendant also understands and acknowledges that the court may impose a term of probation of not less than 1 year and not more than 5 years.

7.     In addition to a term of probation, the Court may impose a fine of not more than $10,000,000 pursuant to Title 18, United States Code, Section 38(b)(5)(A).

8.     The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $400 will be imposed on the defendant pursuant to Title 18, United States Code, Section 3013(a)(2)(B). The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

9.     The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the

7

defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

10. The defendant is aware that Title 28, United States Code, Section 1291 and Title 18, United States Code, Section 3742 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of their right to appeal their sentence. The defendant further hereby waives all rights conferred by Title 28, United States Code, Section 1291 to assert any claim that (1) the statute to which the defendant is pleading guilty is unconstitutional; and/or (2) the admitted conduct does not fall within the scope of the statute of conviction. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with their attorney. The defendant further agrees, together with this

8

Office, to request that the Court enter a specific finding that the defendant's waiver of their right to appeal the sentence imposed in this case and their right to appeal his conviction in the manner described above was knowing and voluntary.

11. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 4 above, that the defendant may not withdraw their plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

12. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

   a. **Base Offense Level**: Pursuant to Section 2B1.1(a)(2), the base offense level is a level 6.

   b. **Specific Offense Characteristics**: Because the offense involved an intended fraud loss of more than $3,500,000 but less than $9,500,000, there is a 18 level enhancement under 2B1.1(b)(1)(J).

    c. **Total Offense Level**: The parties anticipate that the total offense level, prior to any credit for acceptance of responsibility is an offense level 24. With credit for acceptance of responsibility, the parties anticipate that the total offense level is an offense level 21.

    d. **Base Fine Level**: Pursuant to Section 8C2.4(d) and a corresponding offense level of 21, the base fine level is $1,500,000. Moreover, pursuant to Section 8C2.5, the culpability score is 5, for a resulting advisory fine range of $1,500,000 to $3,000,000.

    e. **Recommended Sentence**: The parties agree to recommend to the Court that the Defendant be placed on a term of Probation for not less than 3 years and shall pay a fine in the amount of $50,000, as reduced from the advisory fine range based upon its inability to pay a more substantial fine, pursuant to Section 8C3.3.

12. The Defendant agrees that it will not contest the pending civil/administrative debarment proceedings pending against JET LINK, INC., and shall consent to civil "debarment," both individually and on behalf of JET LINK, INC., for a period of time to be determined by the Department of Defense, as alleged in the pending civil/administrative debarment proceedings. Moreover, during the term of probation, neither JET LINK, INC., nor its individual employees or corporate officers shall participate in any way in the purchase, sale, distribution, or acquisition of aircraft parts, either commercial or military, and shall further be prohibited from associating with or being employed by, any company involved with the purchase or sale of aircraft parts, either commercial or military.

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 9/18/19      By: _____
                       MARC S. ANTON
                       ASSISTANT U. S. ATTORNEY

Date: 9/18/19      By: _____
                       TODD STONE, ESQ.
                       ATTORNEY FOR DEFENDANT

Date: 9-18-19     By: _____
                       ROBERT CANTONE
                       PRESIDENT

Date: 9/18/19      By: _____
                       BRENDA SNELGROVE
                       VICE PRESIDENT